UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JAMES KALAMARAS, JONATHAN TARRELL
HOOKS, LAPHAEL MCCLENIC, JUSTIN BELL,
and CLASS,

               Plaintiffs,

                                MEMORANDUM & ORDER
       -against-                 16-CV-0459(JS)(ARL)

EDWARD P. MANGANO, Nassau County
Executive; MICHAEL SPOSATO, Sheriff
of Nassau County; CAPTAIN GOLIO;
CAPTAIN ROGERS (First Name Believed
To Be Ronald); LIUTENANT [SIC]
LOUIS KERZNER; LIUTENANT [SIC]
CAMINITI (Rehab. Supervisor at
N.C.S.D.); LIUTENANT [SIC] JOHN DOE,
Badge #70 (Grievance Coordinator,
NCSD); CORPORAL HAMILTON, Badge #297;
CORPORAL ARIMANI, Badge #385; SARGEANT
[SIC] MARICHAL, Badge #65; SARGEANT
[SIC] LAVIN (BMU, Seargant [sic]);
CAPTAIN DONAHUE; SEARGANT [SIC] GILOOLEY
(BMU SEARGEANT) [sic]; SEARGANT [SIC] DOYLE;
SEARGANT [SIC] MORRANO, Badge #123; N.Y.S.
COMMS. OF CORRECTIONS; "JOHN DOE" (Commsr.);
OFFICER JOHN DOE, Badge #2574; JOHN DOE,
(Mailroom Supervisor); OFFICER JOHN DOE,
Badge #2901; JOHN DOE, (Mailroom Officer
#2220 Bald with long black beard);
OFFICER PEPITONE; OFFICER FAIELLO;
OFFICER TROTTA; OFFICER SIMPSON
(Has a Brother also a CO, Defendant is
the Shorter of the Two Brothers with a
Long Beard); NURSE JONES; OFFICER GRIFFIN
(BMU Officer); UNDERSHERIFF JOHN DOE,
NCSD; DEPUTY UNDERSHERIFF JOHN DOE, NCSD;
ARMOR CORRECTIONAL HEALTH, INC.; and
MS. MORCOS, (Medical Director of ACH
at NCCC),

               Defendants.
----------------------------------------x

APPEARANCES

For Plaintiff:      James Kalamaras, 15002287, <u>pro</u> <u>se</u>[1]
                    1495 Straight Path
                    Lindenhurst, NY 11757

                    Jonathan Tarrell Hooks, 15000169, <u>pro</u> <u>se</u>
                    Laphael McClenic, 15007005, <u>pro</u> <u>se</u>
                    Justin Bell, 1500, <u>pro</u> <u>se</u>
                    Nassau County Correctional Center
                    100 Carman Avenue
                    East Meadow, NY 11554

For Defendants:     No appearances.

SEYBERT, District Judge:

On January 15, 2016, incarcerated <u>pro</u> <u>se</u> plaintiffs James Kalamaras ("Kalamaras"), Jonathan Tarrell Hooks ("Hooks"), Laphael McClenic ("McClenic"), and Justin Bell ("Bell" and collectively, "Plaintiffs") filed an <u>in</u> <u>forma</u> <u>pauperis</u> Complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against twenty-nine defendants, all of whom are alleged to be "employed [by] and work at Nassau County Correctional Center", with the exception of Edward P. Mangano, Nassau County Executive ("County Executive Mangano"), and Michael Sposato, Sheriff of Nassau County ("Sheriff

_____

[1] Since the time the Complaint was filed, Kalamaras has apparently been discharged from the Nassau Jail and on July 20, 2016, updated his address in his other pending case in this Court, <u>Kalamaras v. Nassau Cty., et al.</u>, 15-CV-4649 (JS) (Docket Entry 29). The Clerk of the Court is directed to update Plaintiff's address in this case. Plaintiffs are reminded of their obligation to keep the Court apprised of any change of address and a failure to do so makes it impossible for the Court to communicate with Plaintiffs and may lead to the dismissal of the Complaint.

Sposato"). (Compl. at 5.[2]) The other defendants are: Captain Golio ("Capt. Golio"); Captain Rogers (First Name Believed To Be Ronald) ("Capt. Rogers"); Liutenant [sic] Louis Kerzner ("Lt. Kerzner"); Liutenant [sic] Caminiti (Rehab. Supervisor at N.C.S.D.) ("Lt. Caminiti"); Liutenant [sic] John Doe, Badge #70 (Grievance Coordinator, NCSD) ("Lt. Doe, #70"); Corporal Hamilton, Badge #297 ("Cpl. Hamilton"); Corporal Arimani, Badge #385 ("Cpl. Arimani"); Sargeant [sic] Marichal, Badge #65 ("Sgt. Marichal"); Sargeant [sic] Lavin (BMU, Seargant [sic]) ("Sgt. Lavin"); Captain Donahue ("Capt. Donahue"); Seargant [sic] Gilooley (BMU Seargant [sic]) ("Sgt. Gilooley"); Seargant [sic] Doyle ("Sgt. Doyle"); Seargant [sic] Morrano, Badge #123 ("Sgt. Morrano"); N.Y.S. Comms. of Corrections, "John Doe" Commsr. ("Comm'r. of Corrections"); Officer John Doe, Badge #2574 ("Officer Doe, #2574"); John Doe, Mailroom Supervisor ("Mailroom Supervisor"); Officer John Doe, Badge #2901 ("Officer Doe, #2901"); John Doe, Mailroom Officer (#2220 Bald with long black beard) ("Officer Doe, #2220"); Officer Pepitone; Officer Faiello; Officer Trotta; Officer Simpson (Has a Brother Also a CO, Defendant is the Shorter of the Two Brothers with a Long Beard) ("Officer Simpson"); Nurse Jones; Officer Griffin (BMU Officer) ("Officer Griffin"); Undersheriff John Doe, NCSD ("Undersheriff Doe"); Deputy Undersheriff John Doe, NCSD ("Deputy Undersheriff

---

[2] When citing to a page in the Complaint, the Court will use those numbers that are generated by the Electronic Case Filing System.

Doe"); Armor Correctional Health, Inc. ("Armor"); and Ms. Morcos, Medical Director of ACH at NCCC ("Morcos" and collectively, "Defendants").  Accompanying the Complaint is an application to proceed in forma pauperis from Kalamaras (Docket Entry 2) and an application for the appointment of pro bono counsel (Docket Entry 4), also from Kalamaras.

The Complaint is styled as a class action and names Kalamaras as the class representative.  Although they each have signed the Complaint, none of the other Plaintiffs paid the filing fee or filed an application to proceed in forma pauperis at the time the Complaint was filed.  Accordingly, by Notice of Deficiency dated January 28, 2016, Hooks, McClenic, and Bell were instructed to either remit the Court's filing fee or complete and return the application to proceed in forma pauperis and Prisoner Authorization ("PLRA") forms within fourteen (14) days in order for their Complaint to proceed.

On February 11, 2016, McCleninc, Hooks, and Bell timely complied with the Notice of Deficiency and filed the required PLRAs and the applications to proceed in forma pauperis.  (Docket Entries 10, 12, 14.)  However, the application to proceed in forma pauperis submitted by McClenic was incomplete.  Accordingly, by Notice of Deficiency dated February 29, 2016, McClenic was instructed to complete and return the enclosed application to proceed in forma pauperis within fourteen (14) days.  On March 11, 2016, McClenic

filed a complete application to proceed in forma pauperis. (Docket Entry 17.)

Upon review of the declarations in support of the applications to proceed in forma pauperis, the Court finds Plaintiffs are qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiffs' requests to proceed in forma pauperis are GRANTED. However, for the reasons that follow, the Complaint is sua sponte DISMISSED IN PART WITHOUT PREJUDICE and DISMISSED IN PART WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1). The application for the appointment of pro bono counsel is DENIED WITHOUT PREJUDICE.

THE COMPLAINT[3]

Plaintiffs' handwritten, thirty-eight page Complaint is largely a collection of diatribes, opinions, conclusions, and speculation. Plaintiffs complain generally about the conditions of their confinement as pretrial detainees at the Nassau County Correctional Center (the "Nassau Jail"). According to the Complaint, "Sheriff Sposato runs a 'Gestapo' type administration . . . ." (Compl. at 30.)

Plaintiffs allege that they "are all housed on B2B" and are "all serving disciplinary infraction keeplock time." (Compl.

---

[3] The following facts are taken from Plaintiffs' Complaint and are presumed to be true for the purposes of this Memorandum and Order.

¶ 22.) Plaintiffs' allegations, while not a model of clarity, can be categorized as follows: (1) claims challenging the sanitary conditions of the cells on B2B (Building-B Floor 2, B-Block) at the Nassau Jail; (2) claims challenging the adequacy of and access to the law library; (3) claims challenging the treatment of inmates in the Behavior Modification Unit ("BMU"); (4) claims challenging the medical care provided by Armor; (5) claims challenging the mail service; (6) claims challenging the commissary; (7) claims challenging the food service; (8) claims challenging the confiscation of reading materials; (9) claims challenging the disciplinary appeals procedure; and (10) claims alleging physical assault.

I.    Claims Challenging the Sanitary Conditions

        Plaintiffs claim that the conditions of their confinement violates their constitutional rights because there they "have no hot water[,] the sinks are each only connected with cold water lines, the cells, vents, and shower walls all have black mold growing, causing Plaintiffs significant known and unknown respiratory conditions." (Compl. ¶ 7.) Plaintiffs further allege that "[t]he showers are coated with layers of soap scum and mold as well as infectious bacteria . . . [and the] comodes [sic] are ripe with rust, [and] chipped lead-based paint." (Compl. ¶¶ 7-8.) Plaintiffs also complain that they are not given "scrub brushes, toilet brushes or cleaning supplies." (Compl. ¶ 8.) Plaintiffs

further complain that they "have been denied razors to shave for weeks" and that the "hair clippers availed to every other housing area are not availed to B2B and E1F Plaintiffs." (Compl. ¶ 67.) Thus, Plaintiffs claim they are "regularly denied the right to maintain their personal hygiene and physical presentation." (Compl. ¶ 67.)

II. Claims Concerning the Law Library

With regard to the claims concerning the law library, although Plaintiffs allege that they are all "housed on B2B" and "are not physically permitted to go to the library as all other inmates do"[4] (Compl. ¶ 22), Plaintiffs allege that the procedure for entering the "E-Building Law Library" is inadequate because inmates are required to "wait on line with upwards of 30-40 inmates to obtain their next court date" before they are permitted to enter the portion of the library where the books and typewriters are kept. (Compl. ¶ 12.) Accordingly, Plaintiffs complain that inmates are being denied "one continuous hour of research time" because they have already spent "30-40 minute[s] wait[ing] on this line." (Compl. ¶ 12.) Plaintiffs also complain that the law library located in the "A-Building" is inadequate because the research materials are "completely inadequate and outdated." (Compl. ¶ 13.) Further, Plaintiffs complain that there is no

---

[4] Kalamaras also alleges that he "was housed in the BMU for over two months and was subject to virtually no law library access." (Compl. ¶ 23.)

regular schedule for library time and that gang members and Federal detainees "monopolize and control the daily workings of the Law Library." (Compl. at 11.)

III. <u>Claims Concerning the Treatment of Detainees Relating to the BMU</u>

Plaintiffs' also complain about the treatment of detainees relating to the BMU. According to the Complaint, "[d]etainees are stripped naked--<u>entirely</u>--<u>in front of a camcorder</u> operated by Sheriff's Department staff, with approximately 6-8 Corrections Officers who stand and watch." (Compl. ¶ 28 (emphasis in original).) While naked, Plaintiffs' allege that a detainee is presented with a "Behavioral Management Unit Enhanced Restraint Order" which authorizes corrections staff to "handcuff, shackle and use a leather restraint to restrict [] movement." (Compl. at 15.) Plaintiffs' claim that "through complete humiliation, duress, and the threat of physical assault, a detainee is illegally coerced to sign . . . ." (Compl. ¶ 28.) Plaintiffs also allege that the "BMU cells violate due process as they are not protected by any fire safety devices, Halon or sprinkler system inside the cells" and inmates there are subjected to "anytime cell search[es]." (Compl. ¶ 29.)

IV. <u>Claims Challenging the Medical Care Provided by Armor</u>

Next, Plaintiffs complain that Armor "has rendered unlawful medical treatment" because "[t]he Medical Director, Ms. Morcos, <u>who is not a doctor</u>, <u>M.D. or PH.D.</u>, makes <u>acute care</u>

decisions, without any doctors supervision, even cancelling (on approx. 11/2/15) wheelchair orders for Plaintiff Kalamaras . . . ." (Compl. ¶ 30 (emphasis in original).)  Plaintiffs allege that the wheelchair had been "prescribed [to Kalamaras] by a different [ ] physician's assistant [ ] when Kalamaras suffered paralysis due to a siezure [sic] in his entire right leg and could not walk." (Compl. ¶ 30.)  According to the Complaint, medical decisions are "based wholly on financially spending as little as possible" and do not properly diagnose patients because Armor does not have "specialized equipment" such as "MRI and CATSCAN equipment" and Armor "refuse[s] to send the complaining inmate to a hospital." (Compl. ¶ 31.)

Further, Plaintiffs' complain that "the medical ward, located at D2D, is a racially charged, and biased, as well as prejudiced area." (Compl. ¶ 31, at 17.)  Plaintiffs allege that the majority of employees in that ward "are all Black" and "the inmates who are what appears to be 'permanent fixtures' and 'residents' here are all Black." (Compl. ¶ 31, at 17 (emphasis in original).)  Plaintiffs claim that these inmates "walk around with ease, do pull-ups, push-ups, and play ball in the yard--while their canes and wheelchairs are parked nearby." (Compl. at 17.)  "In obvious favoritism and fraud . . . ," Plaintiffs claim that the medical staff falsely issue orders of medical need to allow "nearly a dozen Black men [to] walk around perfectly fine, swinging their

unlawfully issued canes around, and using their own feet to propel their wheelchairs, eating 2-3 trays of food each, watching television until 12-1 A.M." (Compl. ¶ 31, at 17.)

Moreover, Plaintiffs allege that Kalamaras visited the medical unit on October 28, 2015 after experiencing "a side effect from major grand mal siezures [sic]" and, although he was paralyzed in his right leg, he was prescribed only physical therapy and steroid treatment. (Compl. ¶ 31, at 17.) Because Kalamaras was not prescribed a wheelchair, he was forced to "drag his leg around the medical unit" and was subjected to ridicule. (Compl. ¶ 31, at 17.)

V. Claims Challenging the Mail Service

With regard to the claims concerning mail, Plaintiffs generally contend that the mail employees "have stolen, destroyed, discarded, and withheld federally protected United States mail." (Compl. ¶ 39.) Plaintiffs' also allege that the mail employees "fail to properly return the return receipt mail slips . . . ." (Compl. ¶ 39.) For example, Plaintiffs claim that Kalamaras attempted to mail a "parcel" to "Channel 7 News" but the parcel was "lost" after Kalamaras tried to mail it certified mail, return receipt requested. (Compl. ¶ 40.) Plaintiffs claim that this parcel was never taken to the post office, and rely on the fact that the return receipt card Kalamaras received was not signed by the receiving party and had no post office bar code markings or

tracking number on it.  (Compl. ¶ 40.)  Finally, Plaintiffs claim
that mail is routinely withheld for "'problem inmate' housing areas
(B2B, BMU, EIG)."  (Compl. ¶ 42.)  For example, Plaintiffs allege
that, following a fight involving two inmates on B2B tier on
December 26, 2015, Officer Trotta withheld mail for all eighteen
inmates on the tier and stated, "[y]ou guys really think you're
getting mail after this?"  (Compl. ¶ 43.)  Although they complained
to Doyle, he is alleged to have done nothing and therefor
Plaintiffs allege violation of their "Federal Constitutional Right
to receive mail from their families, <u>especially the day after
Christmas</u>."  (Compl. ¶ 43 (emphasis in original).)

VI.  <u>Commissary and Food Service Claims</u>

        With regard to the claims concerning the commissary,
Plaintiffs allege that "[t]he commissary serves no food of
substance, but is dominated with sugary carbohydrate loaded
pastries, cakes, and candy bars."  (Compl. ¶ 49.)  Plaintiffs also
complain that the snacks that are being sold at the commissary "at
highly inflammatory prices" and allege that the company that
supplies these snack products "is owned by the Sheriff, or a close
friend or relative, and is a company which he financially benefits
from."  (Compl. ¶¶ 49-50.)

        Plaintiffs also claim that "[e]very night for dinner . .
. the kitchen . . . serves nearly frozen vegetables, <u>uncooked</u>,
<u>unedible</u> peas and carrots, which have caused dental damage to

11

Plaintiffs as a result of biting into hardened vegetables."
(Compl. ¶ 51 (emphasis in original).) Kalamaras claims to have
"lost a filling and cracked a tooth as a result of the
Defendants['] negligence." (Compl. ¶ 51.) Plaintiffs also claim
that the foods served "do not meet the recommended caloric daily
values of the Department of Health, and must be investigated."
(Compl. ¶ 51.)

VII. <u>Claims Challenging the Confiscation of Reading Materials</u>

Plaintiffs allege that, on December 1, 2015 "Sheriff
Michael Sposato came to the BMU Housing Unit and walked around
looking into inmates cells. His response was: (Plaintiff Kalamaras
was in Cell #7): 'What the fuck is this a vacation? Why are these
motherfuckers reading books? By the end of today, I want every
cell searched and all personal books confiscated!'" (Compl. ¶ 52.)
Shortly thereafter, Plaintiffs allege that "Sheriff Sposato ordered
his 'Emergency Response Team' to extract each Plaintiff (Kalamaras
and others) from their cells [and] they confiscated every personal
reading book." (Compl. ¶ 53.) Plaintiffs contend that the BMU
Rules and Regulations sheet permits inmates to have "five personal
reading books" and that "[t]he denial of everyday reading books is
a highly intrusive and invasive seizure and a denial of a primitive
right to read . . . and a Constitutionally protected 1st Amendment
Right . . . ." (Compl. ¶¶ 53-54.)

VIII.    <u>Claims Challenging the Disciplinary Appeal Procedure</u>

Plaintiffs complain that "[t]he appeal procedures which allow for due process protection and redress by the Chief Administrative Officer (Defendant Captain Rogers) and the New York State Commission of Corrections is nonexistent and unconstitutional." (Compl. ¶ 55.) Plaintiffs allege that "no appeals forms [are] given to detainees" (Compl. ¶ 56) and information and instructions on how to appeal is not provided at the conclusion of a disciplinary hearing (Compl. ¶¶ 57-58). Plaintiffs Kalamaras, Hooks, and Bell each allege that they utilized the appeal process, got "<u>no reply</u>, appeal decision, or amended disposition as a result indicating only one conclusion: <u>The Appeal Process Does Not Exist</u>." (Compl. ¶ 59 (emphasis in original).)

IX.  <u>Claims Alleging Physical Assault</u>

Plaintiffs Kalamaras and Hooks also allege that they were each physically assaulted by corrections officers at the Nassau Jail. Kalamaras claims that, on December 28, 2015, he "was seriously assaulted by Defendant Officer John Doe, Badge #2574, while Seargant [sic] Marichal and Louis Kurzner (Liutenant) [sic] stood and watched." (Compl. at 39.) While handcuffed and seated on the floor, Kalamaras claims to have been "blindsided" by Officer #2574 who "punched him repeatedly with a closed fist in the left side of his face." (Compl. at 39.) Also on December 28, 2015,

Hooks alleges that he "was repeatedly struck by Officer John Doe, Badge #2901." (Compl. at 39.) Plaintiffs also allege that on December 27, 2015, an unnamed inmate kitchen worker advised the other inmates not to drink from the juice pitcher because he has observed "C.O.'s #2901 and #2574 urinating in the juice." (Compl. at 39.

Based on the foregoing, Plaintiffs seek injunctive and monetary relief. Among other things, Plaintiffs seek "an overhaul of the Sheriff's unlawful customs, policies, and procedures . . . [including] an injunction to compel the Sheriff's Department of Nassau County to cease its contractual relationship with Armor . . . ." (Compl. ¶ 68.) Plaintiffs also seek an injunction compelling the Defendants to "cease racial and bias-based profiling of inmates hused in B2B and BMU, and D2D . . . " and to "reform and reconstruct[ ] the law library policies, customs, and procedures." (Compl. ¶ 69.) Plaintiffs seeks to recover a monetary damages award in total sum of $500 million. (Compl. at 40.)

DISCUSSION

I.  In Forma Pauperis Applications

Upon review of Plaintiffs' declarations in support of their applications to proceed in forma pauperis, the Court finds that Plaintiffs are qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiffs' requests to proceed in forma pauperis are

GRANTED.

## II. Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. See id. § 1915A(b).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "'detailed factual allegations'" are not required, "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

III. <u>A Class Action Cannot be Brought Pro Se</u>

Because Plaintiffs are proceeding <u>pro se</u>, they cannot represent anyone other than themselves. <u>See, e.g., Moore v. T-Mobile USA</u>, 10-CV-0527, 2011 WL 609818, *6 (E.D.N.Y. Feb. 15, 2011) ("[Plaintiff] cannot convert this case into a class action because he is proceeding <u>pro se</u>, and a <u>pro se</u> litigant cannot represent anyone other than himself or herself.") (citing <u>Cheung v. Youth Orchestra Found. of Buffalo, Inc.</u>, 906 F.2d 59, 61 (2d Cir. 1990)); <u>see also Iannaccone v. Law</u>, 142 F.3d 553, 558 (2d Cir. 1998) ("because <u>pro se</u> means to appear for one's self, a person may not appear on another person's behalf in the others cause"); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.25[2][c][v] (3d ed. 2016) ("<u>pro se</u> class representative cannot adequately represent the interests of other class members.") (citations omitted). Accordingly, to the extent that Plaintiffs request class certification, such request is DENIED.

IV. <u>Section 1983</u>

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983; accord Rehberg v. Paulk, --- U.S. ----, 132 S.
Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).  To state a claim
under Section 1983, a plaintiff must "'allege that (1) the
challenged conduct was attributable at least in part to a person
who was acting under color of state law and (2) the conduct
deprived the plaintiff of a right guaranteed under the Constitution
of the United States.'"  Rae v. Cnty. of Suffolk, 693 F. Supp. 2d
217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53
(2d Cir. 1999)).

   A.   Claims Against County Executive Mangano, Lt. Doe, #70;
        Cpl. Hamilton, Capt. Donahue, Comm'r. of Corrections,
        Mailroom Supervisor, Officer Simpson, Nurse Jones,
        Undersheriff Doe, Deputy Undersheriff Doe

     In order to state a claim for relief under Section 1983
against an individual defendant, a plaintiff must allege the
personal involvement of the defendant in the alleged constitutional
deprivation.  Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010).  The
Supreme Court held in Iqbal that "[b]ecause vicarious liability is
inapplicable to . . . [section] 1983 suits, a plaintiff must plead
that each Government-official defendant, through the official's own
individual actions, has violated the Constitution."  556 U.S. at
676.  Thus, a "plaintiff asserting a Section 1983 claim against a
supervisory official in his individual capacity" must sufficiently
plead that the "supervisor was personally involved in the alleged

17

constitutional deprivation." <u>Rivera v. Fischer</u>, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed. <u>Johnson v. Barney</u>, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, Plaintiffs' Complaint does not include any factual allegations sufficient to demonstrate personal involvement by any of these Defendants regarding the events alleged in the Complaint. In fact, apart from the caption, none of these Defendants except for County Executive Mangano is again mentioned in the body of the Complaint. (<u>See</u> <u>generally</u>, Compl.) Although County Executive Mangano is referenced in the Complaint, Plaintiffs allege only, in conclusory fashion, that the other Defendants are "under Defendant Mangano's control and direction." (Compl. ¶ 1.) With regard to the Defendants who hold supervisory positions, including County Executive Mangano, it appears that Plaintiffs seek to impose liability against them solely based on the supervisory position they hold. Wholly absent, however, are any allegations sufficient to establish any personal involvement by any of these Defendants in the unlawful conduct of which Plaintiffs complain. A supervisor cannot be liable for damage under Section 1983 solely by virtue of being a supervisor because there is no <u>respondeat</u> <u>superior</u> liability under Section 1983. <u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003). Accordingly, Plaintiffs' claims against County

18

Executive Mangano; Lt. Doe, #70; Cpl. Hamilton; Capt. Donahue; Comm'r. of Corrections; Mailroom Supervisor; Officer Simpson; Nurse Jones; Undersheriff Doe; and Deputy Undersheriff Doe are not plausible and are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b).

B. <u>Commissary and Food Service Claims</u>

1. <u>Commissary Pricing and Selection</u>

Plaintiffs complain that the Jail Commissary does not sell any nutritious foods and is overpriced. However, since "there is no constitutional right to access a prison commissary," <u>Mitchell v. City of New York</u>, 10-CV-4121, 2011 WL 1899718, at * 2 (S.D.N.Y. May 13, 2011); <u>see</u> <u>also</u> <u>Davis v. Shaw</u>, 08-CV-0364, 2009 WL 1490609, at * 1 (S.D.N.Y. May 20, 2009), "the prices and product selections offered by prison food vendors cannot give rise to a constitutional violation" <u>Mitchell</u>, 2011 WL 1899718, at *2; <u>see</u> <u>also</u> <u>Miller v. County of Nassau</u>, 12-CV-4164, 2012 WL 4741592, at * 7 (dismissing claims regarding commissary pricing and selection pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A). Accordingly, Plaintiffs' claims regarding commissary pricing and selection are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.

2. <u>Food Service Claims</u>

Plaintiffs complain that they are served "nearly frozen vegetables" and that Kalamaras "lost a filling and cracked a tooth

as a result of the defendants['] negligence." (Compl. ¶ 51.) Plaintiffs also allege that the food served at the Jail does "not meet the recommended caloric daily values of the Department of Health." (Compl. ¶ 51.)

Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment rather than by the Eighth Amendment's prohibition on cruel and unusual punishment, which applies only to convicted prisoners. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1093)). It is unclear if all of the Plaintiffs were pre-trial detainees or post-conviction prisoners during the period giving rise to this claim. For constitutional purposes, however, the analysis is the same. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (claims for deliberate indifference "should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment"). The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment. U.S. CONST., amend. VIII. To establish an Eighth Amendment violation with respect to living conditions, prisoners must demonstrate "unquestioned and serious deprivation of basic human needs" or of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.

Ed. 2d 59 (1981).  The Supreme Court has identified food, clothing, shelter, medical care, reasonable safety, warmth, and exercise as basic human needs.  See Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993); Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991).

To establish an Eighth Amendment violation, a plaintiff must demonstrate both that the challenged condition is serious--the objective component--and the official who is responsible for the conduct acted with deliberate indifference--the subjective component.  See Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994); Wilson, 501 U.S. at 303, 111 S. Ct. at 2326.  The objective prong requires the prisoner to allege a sufficiently serious injury.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  The Second Circuit has defined a sufficiently serious injury as "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway, 99 F.3d at 553 (internal quotation marks and citation omitted).  The subjective prong requires the prisoner to show the charged official acted with a "sufficiently culpable state of mind."  Hathaway, 99 F.3d at 553.  The United States Supreme Court has stated that the subjective element "'entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  Hathaway, 99 F.3d at 553 (ellipsis and alteration in original)

(citing <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1979).

With regard to Plaintiffs' claim that Kalamaras "lost a filling and cracked a tooth" as a result of biting into a "hardened vegetable" (Compl. ¶ 51), the Court finds that such claim does not rise to the level of a Constitutional deprivation. Plaintiffs have not alleged that Kalamaras suffered a sufficiently serious injury nor have Plaintiffs alleged that any of the Defendants acted with a sufficiently culpable state of mind. In addition, Plaintiffs have failed to adequately plead a claim based on the provision of food in nutritionally inadequate portions. Plaintiffs describe that the food served at the Jail does "not meet the recommended caloric daily values of the Department of Health." (Compl. ¶ 51.) Such allegations do not, however, suggest that Plaintiffs face immediate danger to their health and well-being based on the caloric value of their servings standing alone. <u>Robles v. Coughlin</u>, 725 F.2d 12, 15. <u>See also</u> <u>Mays v. Springborn</u>, 575 F.3d 643, 648 (7th Cir. 2009) ("prison officials cannot be held liable under the Eighth Amendment unless the prisoner shows [ ] an objectively serious risk of harm"); <u>McNatt v. Unit Manager Parker</u>, 99-CV-1397, 2000 WL 307000, at *5-6 (D. Conn. Jan. 18, 2000) (allegation of small food portions, absent evidence that prisoners suffered ill effects from these reduced portions, fails to state Eighth Amendment claim) (collecting cases). Similarly, Plaintiffs' claims that they are often served "nearly frozen vegetables" do not

sufficiently allege cruel and unusual punishment as contemplated by the Eighth Amendment. Accordingly, Plaintiffs' food service claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.

    C.  Law Library Claims

        Plaintiffs complain that: (1) the materials available in Jail's law library are "completely inadequate and outdated" (Compl. ¶ 13); (2) they are being denied adequate library time due to the ling wait times to enter the library (Compl. ¶ 12); and (3) BMU inmates "are not physically permitted to go to the library as all other inmates do" (Compl. ¶ 22). These claims, as pled, are implausible because Plaintiffs have not alleged an actual injury. Rather, Plaintiffs claim in conclusory fashion that they are being denied "access to the courts." (Compl. ¶ 26.)

        The Supreme Court has held that the constitutional right of access to courts entitles prisoners to either "adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498, 52 L. Ed. 2d 72 (1977). However, prisoners do not have "an abstract, freestanding right to a law library or legal assistance." See Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996). To allege a plausible constitutional claim based on the denial of adequate law library access, the prisoner must "demonstrate that the alleged shortcomings in the library or

23

legal assistance program hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351, 116 S. Ct. at 2180. Thus, a prisoner must show "actual injury," <u>Lewis</u>, 518 U.S. at 349, in that "'the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim'--for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." <u>Benjamin v. Fraser</u>, 264 F.3d 175, 184 (2d Cir. 2001) (quoting <u>Lewis</u>, 518 U.S. at 351, 116 S. Ct. 2180); <u>see also Monsky v. Moraghan</u>, 127 F.3d 243, 247 (2d Cir. 1997).

Here, as is readily apparent, Plaintiffs have made no allegations regarding any actual injuries they have suffered due to the allegedly inadequate law library or insufficient access to the law library at the Jail. Accordingly, the Complaint fails to state a plausible claim for relief and dismissal is appropriate pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Accordingly, Plaintiffs' Section 1983 claims concerning the adequacy of and access to the law library are DISMISSED WITHOUT PREJUDICE.

D. <u>Claims Challenging the Care Provided by Armor</u>

Plaintiffs allege that "acute care decisions" are made by the Medical Director, Ms. Marcos, who is allegedly not a doctor, and without any doctor's supervision. (Compl. ¶ 30.) Plaintiffs speculate that medical decisions are "based wholly on financially spending as little as possible" in violation of their

constitutional rights. (Compl. ¶ 31.) Plaintiffs also allege that medical staff falsely issue orders of medical need to allow "nearly a dozen Black men [to] walk around perfectly fine, swinging their unlawfully issued canes around, and using their own feet to propel their wheelchairs . . . ." (Compl. ¶ 31, at 17.) Further, Plaintiffs allege that Kalamaras visited the medical unit on October 28, 2015 after experiencing "a side effect from major grand mal siezures [sic]" and, although he was paralyzed in his right leg, he was prescribed only physical therapy and steroid treatment. (Compl. ¶ 31, at 17.) Because Kalamaras was not prescribed a wheel chair, he allegedly was forced to "drag his leg around the medical unit" and was subjected to ridicule. (Compl. ¶ 31, at 17.)

1. Liability of Armor

Armor is "a private company contracted to perform medical services for inmates at the Nassau County Correctional Center." See Edwards v. Armor Corr. Health Svcs., No. 15-CV-4791, 2015 WL 9050783, at *3 (E.D.N.Y. Dec. 14, 2015) (citing Gaines v. Armor Health Care, Inc., No. 12-CV-4666, 2012 WL 5438931, at *3 (E.D.N.Y. Nov. 2, 2012) (additional citation omitted)). It is well-established that "[a]nyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." Filarsky v. Delia, --- U.S. ----, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012) (citation omitted). Thus, a private employer acting under color of state law may be held liable under

Section 1983 for the acts of its employees where the unconstitutional act was authorized or undertaken pursuant to the official policy of the private entity employer and the employer was jointly engaged with state officials or its conduct is chargeable to the state. Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2d Cir. 1990); Dilworth v. Goldberg, 914 F. Supp. 2d 433, 452 (S.D.N.Y. 2012); Mejia v. City of N.Y., 119 F. Supp. 2d 232, 275 (E.D.N.Y. 2000) (collecting cases).

Though thin, in light of their pro se status and affording the pro se Complaint a liberal construction, the Court finds that the allegations in the Complaint sufficiently allege the existence of an unconstitutional policy, practice, or custom relating to the medial care provided at the Jail. In particular, Plaintiffs allege a policy and practice of acute medical care decisions being made by non-medical personnel together with a policy and practice of declining to provide necessary medical treatment based on cost. However, Plaintiffs have failed to allege a plausible claim concerning the adequacy of medical care provided by Armor for the reasons that follow.

2. Adequacy of Medical Care Claims

To state a claim of deliberate indifference to an inmate's medical needs, a plaintiff must plead two elements: (1) that the alleged deprivation of medical care was "sufficiently serious" and (2) that the defendant acted with deliberate

indifference, _i.e._, "the charged official must [have] act[ed] with a sufficiently culpable state of mind." See Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). To determine whether a deprivation is "sufficiently serious," the Court must make two inquires. The first inquiry is whether "the prisoner was actually deprived of adequate medical care," keeping in mind that "the prison official's duty is only to provide reasonable care." Salahuddin, 467 at 279. The second inquiry, which is an objective question, "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 at 280.

The second requirement of a deliberate indifference claim--_i.e._, that "the charged official . . . act[ed] with a sufficiently culpable state of mind"--is a subjective question. Salahuddin, 467 at 280. "[T]he official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." Salahuddin, 467 at 280. Deliberate indifference is "equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 at 280. In other words, "[t]his mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 at 280. However, "the risk of harm must be substantial and the

official's actions more than merely negligent." Id.

Here, Plaintiffs have not sufficiently alleged a deliberate indifference claim against any of the Defendants. Wholly absent from the Complaint are any allegations that any of the Plaintiffs were deprived of medical care that was "sufficiently serious" nor have they alleged that any of the Defendants acted with the requisite state of mind. To the extent that Kalamaras complains that he was experiencing a "side effect" from a grand mal seizure and required a wheelchair prescription, he acknowledges that he was prescribed physical therapy and steroid treatment. Although Plaintiffs may disagree with the medical treatment provided, such disagreement does not give rise to a deliberate indifference claim. See Jandres v. Armor Health Care Inc., 12-CV-3132, 2014 WL 1330655, at *5 (E.D.N.Y. Mar. 31, 2014) (dismissing deliberate indifference claims because "a disagreement in treatment, [ ] does not raise a constitutional violation") (citing Flemming v. City of N.Y., No. 03–CV–0662, 2009 WL 3174060, at *3 (E.D.N.Y. Sept. 30, 2009) ("Whether an MRI should have been done is a classic example of a matter for medical judgment as to the appropriate course of treatment and is not actionable under the Eighth Amendment." (internal quotation marks and citation omitted)); see also Wright v. Genovese, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010). Moreover, to the extent that Plaintiffs seek to challenge the medical care provided to other inmates--i.e., the

allegations that medical staff falsely issued orders of medical need to other inmates, they cannot pursue such claims since pro se litigants may only represent themselves.  See supra at 15-16.  Accordingly, Plaintiffs have not alleged a plausible deliberate indifference claim and such claims against Armor and Morcos are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1).

     E.   <u>Claims Challenging the Mail Service</u>

     With regard to the claims concerning mail, Plaintiffs generally contend that the mail employees "have stolen, destroyed, discarded, and withheld federally protected United States mail." (Compl. ¶ 39.)  Plaintiffs' also allege that the mail employees "fail to properly return the return receipt mail slips . . . ." (Compl. ¶ 39.)  For example, Plaintiffs claim that Kalamaras attempted to mail a "parcel" to "Channel 7 News" but the parcel was "lost" after Kalamaras tried to mail it certified mail, return receipt requested.  (Compl. ¶ 40.)  Plaintiffs claim that this parcel was never taken to the post office, and rely on the fact that the return receipt card Kalamaras received was not signed by the receiving party and had no post office bar code markings or tracking number on it.  (Compl. ¶ 40.)  Finally, Plaintiffs claim that mail is routinely withheld for "problem inmate housing areas (B2B, BMU, EIG)."  (Compl. ¶ 42.)  For example, Plaintiffs allege that, following a fight involving two inmates on B2B tier on

December 26, 2015, Officer Trotta withheld mail for all eighteen inmates on the tier and stated, "[y]ou guys really think you're getting mail after this?" (Compl. ¶ 43.) Although they complained to Doyle, he is alleged to have done nothing and therefor Plaintiffs allege violation of their "Federal Constitutional Right to receive mail from their families, especially the day after Christmas." (Compl. ¶ 43.)

An inmate's right to send and receive both legal and nonlegal mail is protected by the First Amendment, although prison officials may regulate that right if the restrictions they employ are "'reasonably related to legitimate penological interests.'" Thornburgh v. Abbott, 490 U.S. 401, 409, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)); see also Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right--albeit a limited one--to send and receive mail) (citation omitted). Regulations limiting a prisoner's right to send and receive non-legal mail "[are] valid if [they are] reasonably related to legitimate penological interests." Rodriguez v. James, 823 F.2d 8, 12 (2d Cir. 1987) (quoting Turner, 482 U.S. at 89, 107 S. Ct. at 2261). Thus, "[t]he regulation of inmates' mail by state prison officials . . . is a matter of internal prison administration with which [courts] will not interfere, absent a showing of a resultant denial of access to the courts or of some

other basic right retained by a prisoner." <u>Argentine v. McGinnis</u>, 311 F. Supp. 134, 137 (S.D.N.Y. 1969) (citations omitted).

Here, Plaintiffs' allegations relate to non-legal mail and are thus subject to dismissal because Plaintiffs have not alleged a denial of access to the courts or of some other basic right. Rather, Plaintiffs complain that personal mail was withheld on the day after Christmas 2015 and that a parcel intended for delivery to Channel 7 News was "lost." (Compl. ¶¶ 39-40.) And, Plaintiffs have not alleged a pattern or practice of mail interference. <u>See</u> <u>Garraway v. Griffin</u>, No. 12-CV-0924S, 2013 WL 2105903, at *4 (W.D.N.Y. May 8, 2013) (the prisoner's conclusory allegation that his mail was intercepted failed to state an actionable First Amendment claim). Accordingly, Plaintiffs have failed to allege a plausible Section 1983 claim concerning the mail service at the Jail and their generalized, speculative allegation that mail employees have "have stolen, destroyed, discarded, and withheld federally protected United States mail" (Compl. ¶ 39) does not plausibly allege a claim for relief. Thus, Plaintiffs' Section 1983 claims relating to the mail service at the Jail are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

F.  Claims Challenging the: (1) Sanitary Conditions; (2) Treatment of Inmates in the BMU; (3) Confiscation of Reading Materials; (4) Disciplinary Appeals Procedure; and (5) Physical Assault on Inmates Kalamaras and Hooks

Though thin, the Court declines to sua sponte dismiss Plaintiffs' claims challenging the: (1) Sanitary Conditions; (2) Treatment of Inmates in the BMU; (3) Confiscation of Reading Materials; (4) Disciplinary Appeals Procedure; and (5) Physical Assault on Inmates Kalamaras and Hooks.  At this early stage of the proceeding, the Second Circuit instructs that "[s]ua sponte dismissal of pro se prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court."  McEachin, 357 F.3d at 200 (internal quotation marks and citation omitted); see also Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam) ("Sua sponte dismissal of a pro se complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact.  Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (internal quotation marks and citations omitted).  Accordingly, the Court Orders service of the Summonses and Complaint upon the remaining Defendants by the United States Marshal Service ("USMS") forthwith.

V.  Application for the Appointment of Pro Bono Counsel

Unlike criminal defendants, civil litigants do not have

a constitutional right to the appointment of counsel.  However, pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  In deciding a motion for appointment of counsel, "the district judge should first determine whether the indigent's position seems likely to be of substance."  Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).  A position is likely to be of substance if it appears to the court that the plaintiff "appears to have some chance of success . . . ."  Hodge, 802 F.2d at 60-61.  Where a plaintiff satisfies this threshold requirement, the Second Circuit instructs that

> the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61-62.  These factors are not restrictive and "[e]ach case must be decided on its own facts."  Id. at 61.

Notwithstanding the requirement that pleadings drafted by a pro se litigant, are to be construed liberally and interpreted to raise the strongest arguments they suggest, see Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), the Court, upon careful review of the facts presented herein and in light of the factors required by law as discussed above, finds that the appointment of counsel is

not warranted at this time. Even assuming that <u>Hodge</u>'s threshold requirement is satisfied, the record reflects that the legal issues presented are not unduly complex and that Plaintiffs can adequately prosecute their claims <u>pro</u> <u>se</u>. Based on this review, the motion from Kalamaras for appointment of <u>pro</u> <u>bono</u> counsel is DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW when the action is ready for trial, if warranted at that time. It is Plaintiffs' responsibility to retain an attorney or press forward with this lawsuit <u>pro</u> <u>se</u>. <u>See</u> 28 U.S.C. § 1654.

CONCLUSION

For the reasons set forth above, Plaintiffs' application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is GRANTED, however Plaintiffs' claims challenging the Commissary pricing and selection and food service are DISMISSED WITH PREJUDICE. Plaintiffs' claims against County Executive Mangano; Lt. Doe, #70; Cpl. Hamilton; Capt. Donahue; Comm'r. of Corrections; Mailroom Supervisor; Officer Simpson; Nurse Jones; Undersheriff Doe; Deputy Undersheriff Doe; Armor; and Morcos are <u>sua</u> <u>sponte</u> DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii). In addition, Plaintiffs' claims challenging the: (1) law library; (w) care provided by Armor; and (3) mail service are also <u>sua</u> <u>sponte</u> DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii). Plaintiffs' remaining claims shall proceed and the Clerk of the Court is directed to

issue Summonses for the remaining Defendants and to forward the Summonses together with copies of the Complaint and this Order to the USMS for service upon the remaining Defendants forthwith.

The application for the appointment of pro bono counsel is DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW when this case is ready for trial if so warranted at that time.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to update the mailing address for Kalamaras in accordance with this Order (see, supra n.1) and to mail a copy of this Order to Plaintiffs at their last known addresses.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August __2__, 2016
       Central Islip, New York